Okay, that brings us to our final argument of the day. This is going to be remote. Oh yeah, I'm sorry. No, just the Attorney General's counsel's remote. Okay, Ms. Kamani, we can see you on the screen here in the courtroom. Can you see us and hear us? Yes. Can you hear me? Yes. Okay, so we'll call the case. This is Appeal Number 25-1901, Mohammed v. Pamela Bondi, the Attorney General. Okay, is it Mr. Humphrey? We'll hear from you now. Okay. Welcome. This may please the Court. My name is Joseph Giacalone, and I represent the appellant in this matter, Mr. Mohammed. This case is about cow vigilantism which is considered a serious and social and law and order problem in India. Cow vigilantism refers to private individuals or groups attacking people they suspect of cow slaughter, transporting cattle, or trading or consuming beef. These groups claim to be protecting cows, which are sacred in Hinduism. Human rights groups such as Human Rights Watch and media investigations have documented dozens of incidents, many including Muslims. This is a serious and systematic issue in India. It's considered a problem because attacks are often carried out by mobs without legal authority. There's a targeting of minorities, a large proportion of the victims have been Muslims, and there's weak enforcement. The authorities are slow to react or to prosecute vigilantes effectively. It's also an economic impact. Cattle traders, dairy farmers, and leather workers have reported fear and financial loss. The legal standard in the United States for an asylum consists of several elements. The first element is past persecution or a well-founded fear of future persecution. Two, the persecution was on account of a protected ground, including religion. Three, the harm was inflicted by the government or non-state actors. The government is unable or unwilling to control. And four, the internal relocation within the country is not reasonably possible. There's a threshold issue, isn't there, Mr. Jickeloni, and that is the timeliness of the asylum claim? Yes, I would agree with that, Your Honor. I think there's extraordinary circumstances in this case, as I tried to describe in page 10 of my brief, that the petitioner entered the U.S. in 2016, that he had difficulties at that point finding a place to live, money problems, and he was very struggling at that point. I think it's reasonable to see that someone coming to a new country who doesn't have any connections and no money is just focusing on basic needs at that point. An unsophisticated person, let's say, who's not necessarily in tune with U.S. asylum laws and things of that nature and is struggling and is having problems with his family. We haven't gotten into the facts yet, Your Honor, and I can now in that he was involved in the cow slaughter in India. He was a meat purveyor, so he was Muslim. The dominant religion there is Hindu. I understand your client's position that his circumstances were extraordinary. Do you have cases that you can point us to that help us to understand that they were extraordinary as opposed to what the IJ found, which is mundane? No, I can't, you know, specifically point to cases, Your Honor. My argument was more based on his circumstances than the factual situation that he was confronting when he came to America. He experienced past persecution in India. In his trial testimony, his personal statement, which was attached to the asylum application on I-589, was also supported by affidavits of his family. My client described an incident where a local BJP member, the BJP is the main political party in India, and the other party that operates there in a lower amount of the provinces is the Congress Party, but the BJP is the majority party there. They're known to be a Hindu party, and thus there's the veneration of cows under that religion and with their beliefs. So that was in contravention to my client who was slaughtering cows for his business. He had this one major incident. His brothers also experienced violence and had to abscond to Saudi Arabia because they were fearful of their life because of the government actors and the BJP parties who were Hindu who were threatening their lives, and so they absconded to Saudi Arabia. But my client stayed. He tried to continue with the business, and he had an incident when he was walking with his mother, and they were pelted with stones by BJP members. He was injured. He was bleeding. He had abrasions around his legs and his hands, and that really shook him up. Were law enforcement involved at all? Yeah, yes, they were. They did come, I believe, to that, but my client did not want to, you know, press too hard against the law enforcement because he thought there would be repercussions because there is some corruption, I believe, in India with the police, and that often Indians don't trust the police and believe if they do go to the police, then there'll be because they went to the police. So yes, there was an interaction with the police, and then thereafter that night, he received a telephone call, and this person threatened his life and threatened his family's life. Mr. Ciappelloni? Yes. Our case law in this area is pretty severe. I was concussion, but it was only a little bit of a concussion, or scrapes and bruises, but it wasn't a broken bone, etc., etc. What's your best argument for why we should not be bound, feel ourselves bound from the way our circuit has been evaluating persecution? Well, physical harm is not always required. If it's, you know, severe enough, the person, the persecution, I think, qualifies as past persecution. He had the incident of violence, but also with it comes a lot of fear and psychological stress and just psychological issues that stem from the fear he experienced because of the physical altercation that he had with the BJP members. So there was also these threats. I think that even though there's one instance and, you know, some might say that the harm wasn't very egregious, I would argue that it was very egregious, that this incident was traumatic, and he was with his mother, they were stoned. His sister thereafter, by her affidavit that was attached to our evidence that we submitted to the immigration judge, also backed up and corroborated his stories. His brother's affidavits also corroborated his stories that he was traumatized by this incident, and that's why I believe, even though there wasn't a lot of that resulted from this incident, it still shook him up to a great extent. And I think that another element here, in addition to the past persecution, is the future persecution, and I believe that there's many country reports that we submitted as evidence in the asylum application, is that this is still a severe problem in India, and, you know, it's unfortunate that this happens, but... Excuse me, Mr. Giacalone, because you're out of time, are you contesting the government saying you've waived the CAC claim now? Yeah, I would waive it. You have waived it? You agree to waive it? Thank you. Thank you, Your Honors. Okay, you're quite welcome. We'll hear from Ms. Kamani, the Attorney General. Good afternoon, Your Honors. I'm sorry, I can't hear her. Can you turn the volume up in the courtroom? Just hold one second. I don't, I think the problem is on our end. We just need the volume to come up a little bit. Thank you. Okay, why don't you try, just try to speak a little bit louder. You were just a slight bit faint coming through the courtroom here, and why don't you begin again? Sure, good afternoon. Is this if you have difficulty understanding or hearing me? Yep, go right ahead. Mr. Muhammad's counsel says nothing of Mr. Muhammad's individualized risk of persecution, which is a burden he needed to meet in order to warrant withholding of removal. He agreed to operate in 2018, which is about two years after he entered this country. He says nothing of the fact that prior to coming to this country, he worked as a business analyst for Amazon. It is through Amazon that he was secured a business visa to come to this country. And he was considered one of Amazon's top business analysts in India. And therefore, he was given that opportunity to come here and learn further updates and software in his industry. He says nothing of that. He says nothing of the fact that he did not need to return to the cow slaughtering business. And he says nothing of country reports indicating that former cow slaughterers are persecuted or harmed in any way. The events that formed the basis of his claim occurred a decade ago, more than a decade ago. And he is not sure that anyone has a continuing interest in him, neither in his case, nor in this oral argument. And therefore, he has not met his burden of proof, a very high burden of proof for withholding of removal. As for the argument regarding past threats and harm, he encountered one instance of harm that resulted in some cuts and bruises, some scrapes and swelling. He did not require any medical attention. The police helped to dismantle or calm down the situation. He chose not to report the incident to the police at that point. So nothing in the record shows that he met the criteria to show past persecution. Neither was the harm that he endured, neither did that rise to that level, nor did he show that the police would be unable or unwilling to assist him. And as I said, for future persecution, he has shown no individualized risk of future persecution. Like I said, he did not need to return to the cash laundering business. His family ceased to operate that business. And he has other opportunities, given his work experience with Amazon, to garner a living. I will move on to his asylum claim, unless your honors have any questions with respect to withholding of removal. Go right ahead. Thank you, your honor. As for asylum, the statute exclusively bars this court's review of a untimeliness finding. His application was filed nearly three years after he entered this country. The extraordinary circumstances that he stated, not having enough money, not having a permanent address, not knowing the law, those, as the immigration noted, are all typical circumstances. He did not, again, either in his brief before this court or right now during oral argument, he did not identify any constitutional claim or legal question to bring that decision of the agency into this court's purview. And this court recently, and I'm sorry if I pronounce it incorrectly, Gulamjanov decided just last year and cited in Respondent 3, squarely decided that the statute precludes, bars jurisdiction over whether a, whether a applicant, asylum applicant has demonstrated extraordinary or changed circumstances. And the only way to bring it into the court's purview is a constitutional or legal claim, which Mr. Mohammed has not done. I will move on to pass it unless your honors have any questions for asylum. Well, to support your idea that he's asking a purely factual question about whether his circumstances, you know, were extraordinary, met that extraordinary circumstances exception, you cite Con V. Philip, our case from 2009, for this idea that we don't have jurisdiction for that. Has it been abrogated though? The Supreme Court since then has decided Guerrero, Lasparilla, Wilkinson. Yes, your honor. And after those cases is when this case decided its case in Gulamjanov just last year. Right. And in that the court did consider Wilkinson, did for the applicant or petitioner to bring forth a constitutional claim or a legal question. Yeah, there, there we were talking about the party hasn't, hasn't done so hasn't asserted here. Mr. I'm sorry, your honor. Yeah. Here, Mr. Mohammed is saying the IJ aired in, in applying the facts of my case to the law of extraordinary circumstances. So he has, you know, asserted what the jurisdictional hook would be. It's an, it would be the exception to this bar. And he's asking us to weigh in on that. But this court specifically in Gulamjanov and our quote from it said that although the court has an independent obligation to address potential barriers to its jurisdiction, it need not bend over backwards to construct alternative theories to support jurisdiction when the party asserting it has not done so. Here, Mr. Mohammed's perfunctory claim that is change of address his or rather lack of permanent address his insufficient financial resources, him wanting to return to India. Those are all factual findings. And as Wilkinson said, the seriousness of those factual findings in that case, at least in Wilkinson, it was the seriousness of a medical issue are factual findings that are not reviewable. And Mr. Mohammed has not shown how the factual findings to find that those are typical and not extraordinary circumstances. And in responding insights to case law in that this court has issued, I believe it was in 2013, noting that such circumstances are typical. And he has not shown how any error was committed in that finding. He makes a very perfunctory argument in stating that those circumstances, his circumstances were extraordinary. But as when I believe it was you just when you asked whether there was any case law showing that such circumstances amount to extraordinary, Mr. Mohammed's counsel did not point to any. And any further burden to do so. Anything further on your part, Ms. No, Your Honor, I would just conclude with stating that the court should dismiss in part with respect to the asylum claim, the untimeliness denial that that the court likes jurisdiction to review that, that he has waived review of his past protection claim. And then lastly, he did not meet his burden for withholding of a move on that for the court should deny them in that respect. Thank you, Your Honor. OK, very well, we will take this petition under advisement and that the court is in recess for the end of the day.